IN RE INTEREST OF JOSHUA M. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. MITZI M., APPELLANT.
591 N.W. 2d 557

Filed April 2, 1999.   Nos. S-97-1085, S-97-1086.

James A. Wagoner for appellant.

Thomas C. Wolfe, Deputy Hall County Attorney, for appellee.

Brandi Bosselman, guardian ad litem.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

These two juvenile cases in which Mitzi M.'s parental rights were terminated as to her four children were consolidated for trial and appeal. Case No. S-97-1085 involves the child Joshua M., and case No. S-97-1086 involves three children, Jonathan M., Jasmine M., and Devon M. In a combined opinion, in case No. S-97-1085, the Nebraska Court of Appeals affirmed the juvenile court's decision terminating Mitzi's parental rights to Joshua, and Mitzi did not seek further review of that decision. In case No. S-97-1086, the Court of Appeals vacated the juvenile court's order terminating Mitzi's parental rights to Jonathan, Jasmine, and Devon on the basis that the juvenile court failed to adjudicate the juveniles prior to terminating Mitzi's parental rights and the juvenile court, therefore, lacked jurisdiction over the case involving these three children. See *In re Interest of Joshua M. et al.*, 7 Neb. App. 872, 587 N.W.2d 131 (1998).

The State successfully petitioned this court for further review of both cases pursuant to Neb. Ct. R. of Prac. 2F (rev. 1997). Upon further review, we agree with the Court of Appeals in case No. S-97-1085, and the termination of Mitzi's parental rights to Joshua is affirmed. With respect to case No. S-97-1086, we determine that the juvenile court did not lack jurisdiction over the case and that the Court of Appeals' decision remanding the cause to juvenile court with directions to dismiss is reversed. Based on statutory construction, we conclude as a matter of law that when accompanied by due process safeguards, an adjudication is not required prior to termination of parental rights under Neb. Rev. Stat. § 43-292(1) through (5) (Cum. Supp. 1996) as they existed at the time of the termination hearing on August 21, 1997. Further, upon our de novo review, we find the evidence was sufficient to support the juvenile court's order terminating Mitzi's parental rights to Jonathan, Jasmine, and Devon and that termination is in the children's best interests.

The Court of Appeals' decision in case No. S-97-1086 is reversed with directions to the Court of Appeals to instruct the juvenile court to reinstate its order terminating Mitzi's parental rights to Jonathan, Jasmine, and Devon.

## II. STATEMENT OF FACTS

Mitzi is the biological mother of Joshua, Jonathan, Jasmine, and Devon. The fathers of these children are not parties to these appellate proceedings. At the time of the August 21, 1997, combined juvenile court termination hearing, Jonathan was almost 9 years old, Joshua was 4 years old, Jasmine was 2½ years old, and Devon was 1 year old.

In April 1995, while Mitzi was incarcerated, Joshua's father placed Joshua with the then Department of Social Services (DSS) (now known as the Department of Health and Human Services), stating both he and Mitzi were unable to care for Joshua. On August 25, a juvenile petition was filed on behalf of Joshua, alleging he was a child as defined under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) by virtue of being a juvenile without proper support through no fault of his parents. He was adjudicated a juvenile under § 43-247(3)(a) on November 7.

Mitzi was released from prison, but she was again arrested on October 18, 1996. She voluntarily placed Jonathan, Jasmine, and Devon with DSS for 1 day. Due to outstanding warrants, Mitzi was unable to post bond, and a juvenile petition based on § 43-247(3)(a) was filed regarding these three children on October 18. The record shows that at this point in time, the children's immunizations were out of date and that they suffered from various infections. DSS was granted temporary custody of the three children on October 18. For the sake of completeness, we note that according to the affidavit of DSS Child Protective Services worker Steve Wilson, submitted in support of the juvenile petition filed on October 18, in the case of Jonathan, Jasmine, and Devon, Mitzi's voluntary placement with DSS was for 1 day. However, because of Mitzi's continued incarceration, as Wilson stated, "the children [would] have [had] no where to go," and temporary custody with DSS was sought for placement in a group home or foster care. There is some indication in the

record that Mitzi delegated parental authority of the three children to her mother on October 18.

Mitzi has a long history of illegal drug use. She has admitted using "[c]rystal, meth, and cocaine" since the age of 17. She tested positive for drugs on at least three separate occasions while these juvenile proceedings have been pending: in December 1995, in April 1996, and in June 1997. On at least three occasions, Mitzi failed to appear for DSS drug tests scheduled by order of the juvenile court. Mark Nelson, a substance abuse counselor who testified at the termination hearing, stated that based upon his evaluation, Mitzi is dependent on methamphetamine and in his opinion, Mitzi was using drugs at the time of the termination proceedings. At the time of the termination hearing, Mitzi had yet to complete any substance abuse treatment program.

Mitzi has been incarcerated periodically since the inception of the juvenile court proceedings involving Joshua in April 1995. She was incarcerated from April 19 to November 6, 1995; from December 28, 1995, to the end of January 1996; for the night of April 18, 1996; for 1 month in October 1996; for 2 days in March 1997; and from March 31 through the termination proceedings on August 21, 1997, with a projected release date of February 1998. During this same time period, Mitzi had been charged with driving under the influence, shoplifting, unauthorized use of credit cards, forgeries, possession of marijuana and methamphetamine, and unauthorized use of a vehicle. Over the 2 years preceding the termination hearing, Mitzi worked for 1 day.

### III. PROCEDURAL BACKGROUND

As stated above, a juvenile petition regarding Joshua was filed on August 25, 1995, alleging he was a juvenile as defined under § 43-247(3)(a) and requesting juvenile court jurisdiction over Joshua. On November 7, Mitzi admitted that Joshua was without proper support, and Joshua was adjudicated a child as defined under § 43-247(3)(a). Joshua has remained in out-of-home placement since that time. On October 18, 1996, a juvenile court petition regarding Jonathan, Jasmine, and Devon was filed, alleging that these three children were juveniles as

defined under § 43-247(3)(a). An ex parte order of temporary custody in DSS was issued on October 18. Although Devon and Jasmine were placed in foster care with Joshua, and Jonathan was placed with his paternal grandmother, the three children were not adjudicated. The three children have remained in out-of-home placement since October 1996.

As part of Joshua's case, three separate case plans were adopted by the court. A December 1996 report prepared by DSS refers to goals in connection with the three children in addition to Joshua. The terms of the case plans and the report to the court, not repeated here, generally provided for treatment for Mitzi's drug addiction and enhancement of parenting skills. Mitzi failed to complete any of these plans.

On March 14, 1997, the State filed separate motions to terminate Mitzi's parental rights as to all of the children. The motion filed in Joshua's case sought termination based upon § 43-292(2), neglect; § 43-292(4), unfitness; § 43-292(6), failure to correct conditions leading to adjudication; and § 43-292(7), out-of-home placement for 18 months or more and failure to correct conditions leading to out-of-home placement. The motion filed on behalf of Jonathan, Jasmine, and Devon sought termination of parental rights pursuant to § 43-292(2), neglect, and § 43-292(4), unfitness.

A combined termination hearing was held on August 21, 1997, at which Mitzi appeared and was represented by counsel. At the hearing, Mitzi, the DSS case manager assigned to the case, two counselors who had evaluated Mitzi, a Child Protective Services employee, and Mitzi's mother all testified. Numerous exhibits were received relating generally to the case plans adopted in Joshua's case, an alcohol and drug evaluation of Mitzi, and two urine analyses performed on Mitzi.

The evidence at trial established a pattern of conduct whereby Mitzi put her drug dependency needs ahead of the needs of her children. In ordering termination, the juvenile court judge observed:

> [T]he mother's defense to this predicament presents a tragic and apparently never ending circle of circumstances. The mother is in jail because she uses drugs. On the other hand, the mother cannot get treatment because

she is in jail. This cycle has not been broken by the mother during the pendency of either of these cases and the children cannot be left indefinitely in a situation that all evidence would indicate is highly unlikely to be corrected.

The evidence at the termination hearing showed that during the pendency of the juvenile court proceedings, Mitzi had demonstrated no effort either to rehabilitate herself or to remedy her situation. She was frequently late or absent altogether for visitation with her children. When the court offered Mitzi the chance for unsupervised visitation with her children upon Mitzi's completion of an evaluation for alcohol and drug use, she did not complete the evaluation. Mitzi also failed to avail herself of numerous opportunities offered by DSS to regain control of her life and her children.

On September 23, 1997, the juvenile court entered an order terminating Mitzi's parental rights as to all four children. The court found that the two allegations contained in the petitions to terminate Mitzi's parental rights that related to all the children, § 43-292(2) and (4), had been proved by the State by clear and convincing evidence. The juvenile court ruled that Mitzi had substantially, continuously, or repeatedly neglected the children and had refused to provide them necessary parental care and protection due to her frequent and lengthy incarcerations and that termination was justified under § 43-292(2). The juvenile court also determined Mitzi was unfit by reason of her habitual use of narcotic drugs and that her conduct was seriously detrimental to the health, morals, and well-being of all the children, a condition justifying termination under § 43-292(4).

As to Joshua, the juvenile court made two additional findings. The juvenile court found that Joshua was a juvenile as defined under § 43-247(3)(a) (Cum. Supp. 1996), and despite reasonable efforts directed by the court, no amelioration of the conditions that had led to the adjudication had occurred, a condition justifying termination under § 43-292(6). The court also found that Joshua had been in out-of-home placement for more than 18 months and that Mitzi had failed to correct the conditions leading to that placement, a condition justifying termination under § 43-292(7). As to all the children, the juvenile court found that termination of Mitzi's parental rights was in the children's best interests.

On appeal, the Court of Appeals affirmed the juvenile court's termination of Mitzi's parental rights as to Joshua in case No. S-97-1085, stating:

> [T]he evidence clearly and convincingly established that Mitzi had substantially and continuously or repeatedly neglected Joshua. See § 43-292(2). In addition, we find that the evidence also established that Mitzi was unfit by reason of habitual use of illegal drugs, which conduct was seriously detrimental to the health, morals, and well-being of the children. See § 43-292(4). . . .
>
> . . . The evidence shows that given Mitzi's lengthy history of drug dependency, it would be a significant length of time before Mitzi would be in a position to parent her children, even if Mitzi committed to turning her life around. The professionals involved in this case opined that given Mitzi's circumstances and the circumstances of the children, it was in the children's best interests that Mitzi's parental rights be terminated. Based upon our de novo review of the record, we conclude that termination of Mitzi's parental rights is in the best interests of Joshua.

*In re Interest of Joshua M. et al.*, 7 Neb. App. 872, 879, 587 N.W.2d 131, 136-37 (1998).

As to the three children subjects in case No. S-97-1086, the Court of Appeals reversed the juvenile court's order of termination of Mitzi's parental rights and directed the juvenile court to dismiss the case due to a lack of jurisdiction over the children because the juvenile court failed to adjudicate the three children prior to the entry of its order terminating Mitzi's parental rights. The Court of Appeals reasoned, "While a court need not hold a separate adjudication hearing, and while such hearing can be held at the same time as a termination hearing, it is nonetheless necessary that the court make such an adjudication before proceeding to terminate parental rights." *Id.* at 880, 587 N.W.2d at 137. The State successfully petitioned for further review of both cases.

## IV. ASSIGNMENT OF ERROR

In its petition for further review, the State has assigned only one error, that the Court of Appeals erred in case No. S-97-1086

in vacating the juvenile court's order terminating Mitzi's parental rights to Jonathan, Jasmine, and Devon, contrary to statutory language.

## V. STANDARD OF REVIEW

In an appeal from a juvenile court order terminating parental rights, the appellate court tries factual questions de novo on the record. Appellate review is independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998); *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996). Interpretation of a statute presents a question of law. *State ex rel. Garvey v. County Bd. of Comm.*, 253 Neb. 694, 573 N.W.2d 747 (1998); *Pig Pro Nonstock Co-op v. Moore*, 253 Neb. 72, 568 N.W.2d 217 (1997). An appellate court reviews questions of law independent of the trial court's decision. *In re Interest of Amber G. et al., supra.*

## VI. ANALYSIS

### 1. INTERPRETATION OF STATUTES

The issue presented in this case is one of first impression. The question is, Under what conditions pursuant to Nebraska's Juvenile Code, codified at Neb. Rev. Stat. ch. 43, art. 2 (Reissue 1993 & Cum. Supp. 1996), must the juvenile in question be adjudicated prior to the termination of parental rights? For the reasons set forth below, we hold that based upon a plain and ordinary reading of the Nebraska Juvenile Code provisions relating to the termination of parental rights, where the parent has been afforded procedural due process, it is not necessary to adjudicate a child as a juvenile under the Nebraska Juvenile Code prior to the termination of parental rights under § 43-292(1) through (5) as those provisions existed at the time of the termination hearing, which in this case was on August 21, 1997. For the sake of completeness, we note that § 43-292 was amended operative July 1, 1998, and we do not undertake to interpret § 43-292 as recently amended.

In reaching our decision, we are guided by fundamental rules of statutory interpretation. We have stated, "In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense." *PLPSO v. Papillion/La Vista School Dist.*, 252 Neb. 308, 312, 562 N.W.2d 335, 338 (1997). We have also stated, "When considering a series or collection of statutes pertaining to a certain subject matter which are in pari materia, they may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent and sensible." *Baker's Supermarkets v. State*, 248 Neb. 984, 991, 540 N.W.2d 574, 579 (1995). Finally, we have observed that "unless the Legislature has plainly indicated a contrary purpose or intention, when a statute specifies the object of its operation, the statute excludes from its operation every object not expressly mentioned therein." *PLPSO v. Papillion/La Vista School Dist.*, 252 Neb. at 314, 562 N.W.2d at 339. See, also, *State v. Wragge*, 246 Neb. 864, 867, 524 N.W.2d 54, 57 (1994) (holding that "a statute which specifies the object of its operation excludes therefrom every object not expressly mentioned (expressio unius est exclusio alterius)"); *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 769, 478 N.W.2d 270, 274 (1992) (recognizing "the general principle of statutory construction that an expressed object of a statute's operation excludes the statute's operation on all other objects unmentioned by the statute").

### 2. INTERPRETATION OF NEBRASKA JUVENILE CODE PROVISIONS REGARDING TERMINATION OF PARENTAL RIGHTS

Guided by the foregoing principles of statutory interpretation, we review the Nebraska Juvenile Code provisions regarding termination of parental rights applicable to these cases. Regarding the filing of termination proceedings, § 43-291 provides in relevant part:

> Facts may also be set forth in the *original petition*, a supplemental petition, or motion filed with the court alleging that grounds exist for the termination of parental rights. After a petition, a supplemental petition, or motion has

been filed, the court shall cause to be endorsed on the summons and notice that the proceeding is one to terminate parental rights, shall set the time and place for the hearing, and shall cause summons and notice, with a copy of the petition, supplemental petition, or motion attached, to be given in the same manner as required in other cases before the juvenile court.

(Emphasis supplied.)

Section 43-292 sets forth the statutory grounds for termination. The version of § 43-292 which was in effect at the time of these proceedings listed seven separate conditions, the existence of any one of which when combined with the best interests of the juvenile supports a decision to terminate parental rights. Section 43-292 states in part that the juvenile court may terminate parental rights between the parents and the child when one of the following conditions exists:

(1) The parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition;

(2) The parents have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection;

(3) The parents, being financially able, have willfully neglected to provide the juvenile with the necessary subsistence, education, or other care necessary for his or her health, morals, or welfare or have neglected to pay for such subsistence, education, or other care when legal custody of the juvenile is lodged with others and such payment ordered by the court;

(4) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile;

(5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period;

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination; or

(7) The juvenile has been in an out-of-home placement for eighteen or more consecutive months and the parents have failed to correct the conditions leading to the juvenile's out-of-home placement in spite of reasonable efforts and services to the parents ordered by the court or offered by the Department of Health and Human Services or other designated agency.

We are aware that § 43-292 has been amended, providing additional grounds for termination of parental rights and amending certain of the foregoing provisions. The proceedings in the instant case, however, occurred prior to the operative date of the amendments.

Section 43-247 sets forth the juvenile court's jurisdiction. Section 43-247 (Cum. Supp. 1996) provides in pertinent part:

The juvenile court in each county as herein provided shall have jurisdiction of:

(1) Any juvenile who has committed an act other than a traffic offense which would constitute a misdemeanor or an infraction under the laws of this state, or violation of a city or village ordinance;

(2) Any juvenile who has committed an act which would constitute a felony under the laws of this state;

(3) Any juvenile (a) who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian neglects or refuses to provide special care made necessary by the mental condition of the juvenile; or who is in a situation or engages in an occupa-

tion dangerous to life or limb or injurious to the health or morals of such juvenile or (b) who, by reason of being wayward or habitually disobedient, is uncontrolled by his or her parent, guardian, or custodian; who deports himself or herself so as to injure or endanger seriously the morals or health of himself, herself, or others; or who is habitually truant from home or school;

(4) Any juvenile who has committed an act which would constitute a traffic offense as defined in section 43-245;

(5) The parent, guardian, or custodian who has custody of any juvenile described in this section;

(6) The proceedings for termination of parental rights as provided in the Nebraska Juvenile Code;

(7) The proceedings for termination of parental rights as provided in section 42-364; and

(8) Any juvenile who has been voluntarily relinquished, pursuant to section 43-106.01, to the Department of Health and Human Services . . . .

We note that this section was amended pursuant to 1997 Neb. Laws, L.B. 307 and L.B. 622. The additional amendments provided by L.B. 622 became operative on September 13, 1997, after the date of the termination hearing, and are not relevant to the analysis of this case. The amended sections were not relied upon by the juvenile court in reaching its decision to terminate Mitzi's parental rights to Jonathan, Jasmine, and Devon and are not relevant to our analysis.

The plain language of § 43-247(6) states that the juvenile court shall have jurisdiction of "[t]he proceedings for termination of parental rights as provided in the Nebraska Juvenile Code." The Nebraska Juvenile Code provides for the filing of "the original petition" seeking the termination of parental rights under § 43-291. Thus, the juvenile court acquires jurisdiction of a case for termination of parental rights brought on, inter alia, in an original petition filed under § 43-291 of the Nebraska Juvenile Code. By its terms, "the original petition" to terminate parental rights under § 43-291 is an initial filing and does not require prior action in or by the juvenile court. Taken together, §§ 43-247(6) and 43-291 indicate that the juvenile court prop-

erly acquires jurisdiction over an original action to terminate parental rights as provided in the Nebraska Juvenile Code without prior juvenile court action, including adjudication.

In meeting our obligation to read the collection of statutes contained in the Nebraska Juvenile Code in pari materia and giving meaning to all the sections, we examine the remaining relevant Nebraska Juvenile Code sections regarding termination of parental rights to determine whether juvenile court involvement is required prior to the juvenile court's acquisition of jurisdiction of the proceedings for termination of parental rights. We, therefore, examine § 43-292.

Section 43-292 provided seven bases for termination of parental rights when these cases were pending. Only two of the seven provisions of § 43-292 explicitly or implicitly require juvenile court action prior to the termination of parental rights and by inference require a prior adjudication. Subsection (6) of § 43-292 explicitly requires a prior adjudication under § 43-247(3)(a), and subsection (7) implicitly seems to require a prior adjudication by virtue of its reference to prior court-ordered efforts and services. Subsection (6) provides that parental rights can be terminated where reasonable efforts "under the direction of the court" have failed to correct the conditions leading to the prior determination that the juvenile was one as described under § 43-247(3)(a). Subsection (7) of § 43-292 permits the termination of parental rights as to a juvenile who has been in out-of-home placement for 18 or more consecutive months and the parents have failed to correct the conditions leading to the placement "in spite of reasonable efforts and services to the parents ordered by the court or offered by" an appropriate agency. For the sake of completeness, we note that the last phrase of § 43-292(3) refers to court-ordered support, which we understand to encompass noncustodial support orders in nonjuvenile cases, such as dissolution. See, e.g., Neb. Rev. Stat. § 42-364(7) (Reissue 1998).

Unlike § 43-292(6) and (7), § 43-292(1) through (5) do not require, imply, or contemplate juvenile court involvement, including adjudication, prior to the filing of the petition for termination of parental rights. Instead, subsections (1) through (5) each concern historical actions or conditions of the parents such

as abandonment, neglect, unfitnesses, and mental deficiency. There is no requirement of longitudinal involvement of the juvenile court under § 43-292(1) through (5), much less a prior adjudication. Under § 43-291, an original petition may be filed seeking termination of parental rights and the juvenile court acquires jurisdiction of the termination proceeding brought on by an original action under § 43-247(6) without prior juvenile court involvement, except where required by the Nebraska Juvenile Code.

Through the plain language of § 43-292, the Legislature has demonstrated its intention that under certain circumstances, prior court action or an adjudication is required before parental rights can be terminated. See § 43-292(6) and (7). Conversely, in this same statutory section, the Legislature has listed other conditions justifying parental termination, dependent not upon prior juvenile court action but upon the actions or conditions of the parents. The Legislature's obvious inclusion of prior court action under certain conditions demonstrates a clear intention that such action is necessary only under the enumerated circumstances.

The plain and ordinary meaning of §§ 43-291 and 43-292, taken together, is that parental rights may be terminated in an original proceeding. To hold that an adjudication must occur prior to the termination of parental rights would render portions of the provisions of these sections meaningless. It is well established that in construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of the court to read anything plain, direct, and unambiguous out of a statute. *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998).

In reading the provisions of the Nebraska Juvenile Code, we are mindful that the terms "adjudicate" and "adjudication" are liberally distributed throughout the code and have been the object of judicial comment. Nothing in the jurisprudence surrounding the interpretation of "adjudication" precludes our conclusion that an adjudication is not required prior to termination under § 43-292(1) through (5).

With regard to the adjudication and dispositional phases of juvenile proceedings, this court has previously stated that the "purpose of the adjudication phase of the proceeding is to protect the interests of the child; the purpose of the dispositional phase is to determine placement and the rights of the parties in the action." *In re Interest of Amber G. et al.*, 250 Neb. 973, 980, 554 N.W.2d 142, 148 (1996). "Adjudication" means that a child "is a juvenile within the meaning of the [Nebraska Juvenile Code]," whereas a disposition addresses "promotion and protection of a juvenile's best interests." *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 263, 417 N.W.2d 147, 156 (1987). This court has held that under the Nebraska Juvenile Code, the adjudication and dispositional phases may be combined into one hearing. *In re Interest of K.M.S.*, 236 Neb. 665, 463 N.W.2d 586 (1990).

This court recognized in a case arising before enactment of § 43-292(7), which subsection pertains to out-of-home placement and failure to correct conditions leading to out-of-home placement, that

> the juvenile court may terminate parental rights under the various grounds specified in [the] subsections . . . of § 43-292 without providing the parent with a reasonable opportunity to rehabilitate himself or herself. . . . It is only to terminate parental rights pursuant to subsection (6) of § 43-292 [as it then existed] that the State is required to prove that the parents have been provided with a reasonable opportunity to rehabilitate themselves according to a court-ordered plan and have failed to do so.

*In re Interest of L.C., J.C., and E.C.*, 235 Neb. 703, 712, 457 N.W.2d 274, 280 (1990).

In *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992), we held that the juvenile court failed to acquire jurisdiction over the child through an adjudication hearing and, therefore, was without jurisdiction to act with regard to a motion for termination of parental rights due to failure to follow a rehabilitation plan. See § 43-292(6). In that case, the basis for the termination of parental rights was the parent's failure under § 43-292(6) to comply with court-ordered plans aimed at correcting the circumstances that led to purported juvenile court

jurisdiction. This holding in *In re Interest of D.M.B.*, as well as the observation in *In re Interest of L.C., J.C., and E.C.* quoted above, is consistent with our conclusion that § 43-292(6) anticipates a prior adjudication by the juvenile court; however, other provisions of the code, with the exception of § 43-292(7), do not.

With respect to the adjudicative phase of juvenile proceedings, we are aware that the version of § 43-278 in effect at the time of the proceedings herein provided, "All cases filed under subdivision (3) of section 43-247 shall have an adjudication hearing not more than ninety days after a petition is filed." We have held that the language of § 43-278 is directory, not mandatory. *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990). The petition filed under § 43-247(3)(a) on October 18, 1996, sought a determination that the three children in case No. S-97-1086 had been abandoned and lacked parental care by reason of their mother's drug addiction and frequent incarceration. The children were taken into detention on October 18, 1996, and remained "detained" on August 21, 1997, the date of the termination hearing. No action was taken to adjudicate Jonathan, Jasmine, and Devon. While we do not condone the failure to seasonably adjudicate the three children in case No. S-97-1086 pursuant to § 43-278, see *In re Interest D.M.B.*, *supra*, nothing in § 43-278 required that the children be adjudicated as a prerequisite to parental termination under § 43-292(2) and (4), and the failure to conduct a detention hearing or to adjudicate them is not fatal to the termination proceedings brought on by the petition filed March 14, 1997, seeking termination under § 43-292(2) and (4).

In the Nebraska Juvenile Code sections addressing the termination of parental rights, the statutory language explicitly permits the filing of an original petition to initiate a parental rights termination proceeding without regard to prior juvenile court action, see § 43-291, thus vesting jurisdiction of the case in the juvenile court under § 43-247(6) and, furthermore, five of the seven bases by which parental rights can be terminated under § 43-292 make no mention explicitly or implicitly of prior juvenile court involvement. We thus conclude that under the statutes in effect during these proceedings, an adjudication was not

required prior to the termination of parental rights sought under § 43-292(1) through (5) and that the Court of Appeals' determination that an adjudication was required prior to termination under § 43-292(2) and (4) in case No. S-97-1086 was incorrect.

We have long recognized that " '[t]he integrity of the family unit, in this instance the continuing legal and social relationship of parent and minor child, is one of the fundamental rights guaranteed by the Constitution of the United States,' " *In re Interest of L.J., J.J., and J.J.*, 220 Neb. 102, 115, 368 N.W.2d 474, 483 (1985) (quoting *State v. Metteer*, 203 Neb. 515, 279 N.W.2d 374 (1979)), and that such rights "should not lightly be alienated," *id.* at 115-16, 368 N.W.2d at 483. Additionally, in *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 264, 417 N.W.2d 147, 156 (1987), we quoted *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), where the U.S. Supreme Court stated: " 'The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.' " Accordingly, in connection with our conclusion that the language of the Nebraska Juvenile Code permits a juvenile court to proceed with a hearing on the termination of parental rights without a prior adjudication hearing where such termination is sought under § 43-292(1) through (5), we further require that such proceedings be accompanied by due process safeguards, as statutory provisions cannot abrogate constitutional rights. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). See, also, § 43-279.01.

### 3. APPLICATION TO INSTANT CASE

We now address the merits of the instant cases. Initially, we note that the circumstances of Mitzi's life leading to the termination of her parental rights are the same for all four children. Mitzi's drug addiction and the corresponding frequent and lengthy absences from her children due to incarceration have a negative effect on all four children. While incarceration alone is not a basis for termination of parental rights, see *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992), we note that Mitzi's incarceration has contributed to the neglect of her children.

### (a) Case No. S-97-1085: Joshua

Mitzi's parental rights to Joshua in case No. S-97-1085 were terminated based on § 43-292(2), (4), (6), and (7). Neither Mitzi nor the State challenge the Court of Appeals' decision affirming the termination. The Court of Appeals' decision affirming the termination of Mitzi's parental rights to Joshua in case No. S-97-1085 is affirmed.

### (b) Case No. S-97-1086: Jonathan, Jasmine, and Devon

The motion seeking the termination of Mitzi's parental rights as to Jonathan, Jasmine, and Devon was based on § 43-292(2), neglect, and (4), unfitness, which subsections, as stated above, require no prior adjudication or court involvement prior to termination of parental rights and instead are triggered by and established by proof of the actions or conditions of the parent.

The clear and convincing evidence adduced at the termination hearing and reviewed de novo by this court leads to the conclusion that Mitzi is unfit by reason of her drug use and consequent incarceration to provide the care, subsistence, and protection needed by Jonathan, Jasmine, and Devon and, in fact, has neglected to provide for them. The evidence establishes that Mitzi has neglected the children as defined by § 43-292(2) and is unfit as defined by § 43-292(4). The record adequately demonstrates that even when given the chance to rehabilitate herself, Mitzi is either unwilling or unable to forgo her drug addiction. Affording Mitzi yet another opportunity at rehabilitation is neither necessary nor recommended. Instead, the time has come to end the procedural limbo for Jonathan, Jasmine, and Devon. The record amply supports the conclusion that it is in the best interests of these three children to terminate Mitzi's parental rights.

In case No. S-97-1086, the Court of Appeals concluded that the failure to adjudicate the three children deprived the juvenile court of jurisdiction to terminate Mitzi's parental rights as to these three children and ordered the case dismissed. We have found this conclusion to be incorrect. Accordingly, we reverse the decision of the Court of Appeals in case No. S-97-1086 with instructions to the Court of Appeals to direct the juvenile court

to reinstate its order terminating Mitzi's parental rights to Jonathan, Jasmine, and Devon.

## VII. CONCLUSION

Based upon our de novo review of the facts in these cases and upon our independent duty to decide questions of law, we find that Mitzi's parental rights as to Joshua were properly terminated in case No. S-97-1085 and that the Court of Appeals' decision is affirmed. As to Jonathan, Jasmine, and Devon, we conclude that Mitzi's parental rights as to these three children in case No. S-97-1086 were properly terminated by the juvenile court without a prior adjudication by the juvenile court. We reach this conclusion based on statutory construction and our legal conclusion that a prior adjudication is not required for the termination of parental rights brought under § 43-292(1) through (5) when accompanied by due process safeguards and our further determination that the evidence is sufficient to terminate Mitzi's parental rights under § 43-292(2) and (4) and that it is in the children's best interests to do so. The decision of the Court of Appeals is reversed in case No. S-97-1086 with directions to the Court of Appeals to instruct the juvenile court to reinstate its order terminating Mitzi's parental rights to Jonathan, Jasmine, and Devon.

JUDGMENT IN NO. S-97-1085 AFFIRMED.
JUDGMENT IN NO. S-97-1086 REVERSED,
AND CAUSE REMANDED WITH DIRECTIONS.