filing of an appeal shall vest in an appellee the right to a cross-appeal against any other party to the appeal. The cross-appeal need only be asserted in the appellee's brief as provided by § 2-109(D)(4)."

Based upon our court rules, Joseph, as an appellee, was required to identify his cross-appeal on the cover of his brief and in a separate section in compliance with § 2-109(D)(4). As in *In re Interest of Natasha H. & Sierra H., supra*, we decline to waive the rules on his behalf and to award him affirmative relief. Because Susan and Joseph both assigned as error the court's decision adjudicating Chloe, however, we consider Joseph's argument on this issue in addressing Susan's assigned error.

## VII. CONCLUSION

We conclude that the State sufficiently proved that Chloe was within the meaning of § 43-247(3)(a) because there was a definite risk that her parents would not provide for her needs, resulting in harm. Because Joseph did not properly designate his brief as a cross-appeal, we do not address his assigned errors. Accordingly, we affirm the county court's order.

Affirmed.

---

In re Interest of Keisha G., a child
under 18 years of age.
State of Nebraska, appellee, v.
Michael G., appellant.
___ N.W.2d ___

Filed December 3, 2013.    No. A-12-1203.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.
2. **Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.

3. **Juvenile Courts: Parental Rights: Notice.** Neb. Rev. Stat. § 43-279.01(2) (Reissue 2008), which governs juveniles in need of assistance or termination of parental rights, requires that adequate notice of the possibility of the termination of parental rights be given in adjudication hearings before the juvenile court may accept an in-court admission from a parent as to all or any part of the allegations of the petition before the juvenile court.

4. **Juvenile Courts: Final Orders: Appeal and Error.** Generally, it has been held that adjudication and disposition orders are final, appealable orders.

5. **Final Orders: Time: Appeal and Error.** An appeal of a final order must be made within 30 days after the entry of such order.

6. **Juvenile Courts: Parental Rights: Jurisdiction: Appeal and Error.** In the absence of a direct appeal from an adjudication order, a parent may not question the existence of facts upon which the juvenile court asserted jurisdiction.

7. **Juvenile Courts: Parental Rights: Due Process.** A defective adjudication does not preclude a termination of parental rights under Neb. Rev. Stat. § 43-292(1) through (5) (Cum. Supp. 2012), since no adjudication is required to terminate pursuant to those subsections, as long as due process safeguards are met.

8. **Parental Rights: Proof.** In Nebraska statutes, the bases for termination of parental rights are codified in Neb. Rev. Stat. § 43-292 (Cum. Supp. 2012). Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child.

9. **Juvenile Courts: Parental Rights.** Neb. Rev. Stat. § 43-292(4) (Cum. Supp. 2012) provides that a juvenile court may terminate parental rights when the parent is unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile.

Appeal from the County Court for Hall County: Arthur S. Wetzel, Judge. Reversed.

Jerry Fogarty for appellant.

Martin R. Klein, Deputy Hall County Attorney, for appellee.

Tanya J. Hansen, of Leininger, Smith, Johnson, Baack, Placzek & Allen, guardian ad litem.

Moore, Pirtle, and Bishop, Judges.

Bishop, Judge.

## INTRODUCTION

Michael G. appeals from an order of the county court for Hall County, sitting as a juvenile court, terminating his parental

rights to his daughter, Keisha G., pursuant to Neb. Rev. Stat. § 43-292(4) and (6) (Cum. Supp. 2012). On appeal, Michael alleges deficiency of the pleadings, improper admission of evidence, failure to properly advise him of his rights, and insufficiency of evidence. We agree that Michael was not given a proper advisement of rights at the adjudication hearing before entering his plea of no contest. This defect during the adjudication phase excludes consideration of termination pursuant to § 43-292(6) and limits this court's review of the termination proceeding to the one remaining statutory ground for which we find insufficient evidence to terminate Michael's parental rights. We reverse.

## PROCEDURAL BACKGROUND

Keisha was born in October 2010 and removed from her mother's care on September 19, 2011. Michael was incarcerated at the time of the removal and never had custody of Keisha. On February 8, 2012, Keisha was adjudicated as a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). Both parents attended the adjudication hearing and entered pleas of no contest after being advised of certain rights. Before entering his plea, Michael was not advised that the termination of his parental rights was a potential consequence of the proceeding.

A dispositional hearing was conducted on March 29, 2012. Michael attended. The juvenile court ordered a case plan.

On June 25, 2012, the guardian ad litem filed a motion to terminate Michael's parental rights. Although the statute was not cited, the motion alleged grounds for termination consistent with § 43-292(4) and (6):

> 1. [Michael] is unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is seriously detrimental to the health, morals, or well-being of the juvenile; and
>
> 2. Following the determination that the juvenile was one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the

family have failed to correct the conditions leading to the determination.

The motion did not allege that termination of parental rights was in the child's best interests.

The mother relinquished her parental rights to Keisha on July 24, 2012. On the same date, Michael was present at the initial hearing on the motion to terminate his parental rights. The juvenile court advised Michael of certain rights, and Michael confirmed that he understood those rights. The juvenile court further advised Michael of the allegations in the motion to terminate, which advisement did not include a reference to Keisha's best interests. Michael did not attend any of the three subsequent hearings that took place, but he was represented by counsel.

On November 8, 2012, the juvenile court conducted a termination hearing. Witnesses testified, inter alia, whether termination of Michael's parental rights would be in Keisha's best interests. Michael's counsel had the opportunity to object and cross-examine witnesses on the issue. Michael's counsel objected on various grounds to all testimony concerning Keisha's best interests but did not raise any deficiency in the pleadings. Michael's counsel addressed Keisha's best interests during closing arguments.

The juvenile court terminated Michael's parental rights in an order entered on November 26, 2012. The juvenile court found sufficient grounds for termination consistent with § 43-292(4) and (6). The juvenile court made the following finding concerning best interests:

> This Court finds, based on the evidence presented, that it is in the best interest of [Keisha] for [Michael's] parental rights to be terminated. Specifically, this Court finds that there is no reasonable expectation that [Michael] will be in a position to provide permanency or stability to [Keisha] and that [Keisha] cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity.

Michael appeals. We summarize additional relevant facts in the analysis portion of this opinion.

## ASSIGNMENTS OF ERROR

Michael assigns, condensed and restated, that the trial court erred in (1) determining that termination of his parental rights was in Keisha's best interests when the motion to terminate made no such allegation, (2) finding that it had jurisdiction to hear allegations under § 43-292(4) and (6), (3) admitting certain evidence over Michael's objections, and (4) finding sufficient evidence to terminate Michael's parental rights.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

[2] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *Id.*

## ANALYSIS

*Insufficient Advisement of Rights at*
*Adjudication Phase and Impact*
*on Termination Pursuant*
*to § 43-292(6).*

Michael claims that the juvenile court did not have jurisdiction to terminate his parental rights under § 43-292(6), because he was not properly advised prior to entering his no contest response to the State's adjudication petition. He alleges that he was not advised that his parental rights could be terminated. At the adjudication hearing, the juvenile court advised Michael:

> A juvenile petition has been filed alleging that your child is within the jurisdiction of the juvenile court. Because of the nature of these allegations, you're entitled to certain rights. . . .
>
>     . . . .

Today you may be asked to either admit or deny the allegations contained in the juvenile petition. If you deny those allegations, you're entitled to a speedy adjudication hearing. We call that a trial. And that's what was originally scheduled for today's date.

At that hearing the state's required to prove the allegation of this petition by a preponderance of the evidence. . . .

If the state's able to prove the allegations of the petition or if you should admit those allegations, the court would find your child is within the jurisdiction of the juvenile court and we would proceed to the next stage of those proceedings.

And that second stage is called the disposition stage. In other words, we decide how to dispose of the case or to — how to make proper decisions regarding the care and custody of your child.

The court has a wide variety of options available to it. For example, the court can permit your child to remain in the home subject to supervision or make an order committing the child to the care of a suitable institution, to the care of a reputable citizen of good moral character.

We can make placements to the care of an association willing to receive the child, to the care of a suitable family, or we can commit the child more — which is the common scenario, to the care and custody of the department of health and human services.

If you're unsatisfied with any decision that the court makes, you have a right to appeal that decision to the Court of Appeals and to have a record made for purposes of that appeal.

Michael confirmed that he understood these rights.

According to Neb. Rev. Stat. § 43-279.01 (Reissue 2008):

(1) When the petition alleges the juvenile to be within the provisions of subdivision (3)(a) of section 43-247 . . . the court shall inform the parties of the:

(a) Nature of the proceedings and the possible consequences or dispositions pursuant to sections 43-284, 43-285, and 43-288 to 43-295 [sections 43-288 to 43-295

address orders as to juveniles, including possible termination of parental rights];

(b) Right to engage counsel of their choice at their own expense or to have counsel appointed if unable to afford to hire a lawyer;

(c) Right to remain silent as to any matter of inquiry if the testimony sought to be elicited might tend to prove the parent or custodian guilty of any crime;

(d) Right to confront and cross-examine witnesses;

(e) Right to testify and to compel other witnesses to attend and testify;

(f) Right to a speedy adjudication hearing; and

(g) Right to appeal and have a transcript or record of the proceedings for such purpose.

(2) After giving the parties the information prescribed in subsection (1) of this section, the court may accept an in-court admission . . . .

[3] In *In re Interest of Brook P. et al.*, 10 Neb. App. 577, 583, 634 N.W.2d 290, 297 (2001), we said: "Section 43-279.01(2) means that a juvenile court should accept a parent's in-court admission only after informing the parties as to the nature of the proceedings and the possible consequences or dispositions, including termination of parental rights." And in *In re Interest of N.M. and J.M.*, 240 Neb. 690, 696, 484 N.W.2d 77, 81 (1992), the Nebraska Supreme Court said that "adequate notice of the possibility of the termination of parental rights must be given in adjudication hearings before the juvenile court may accept an in-court admission . . . from a parent as to all or any part of the allegations of the petition before the juvenile court."

[4-6] At the adjudication hearing, Michael was not informed that termination of his parental rights was a potential consequence of the court's finding that Keisha was a juvenile within the provisions of § 43-247(3)(a). Therefore, if he had appealed the original adjudication, the juvenile court's failure to inform Michael of the potential consequences of the juvenile proceeding before accepting his admission to the allegations would have been fatal to the adjudication, as the adjudication was based on Michael's no contest response. See

*In re Interest of Brook P. et al., supra*. However, Michael did not appeal the juvenile court's initial adjudication. Generally, it has been held that adjudication and disposition orders are final, appealable orders. See *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). An appeal of a final order must be made within 30 days after the entry of such order. See, Neb. Rev. Stat. § 25-1912 (Reissue 2008); Neb. Rev. Stat. § 43-2,106.01 (Cum. Supp. 2012). Further, in the absence of a direct appeal from an adjudication order, a parent may not question the existence of facts upon which the juvenile court asserted jurisdiction. *In re Interest of Brook P. et al., supra*.

In *In re Interest of Brook P. et al., supra*, the parents were not advised at the adjudication hearing of the potential consequences of the juvenile proceeding before the court accepted their admission to the allegations. However, the parents did not file a direct appeal from the adjudication order. Therefore, on appeal, this court determined that the parents were unable to question the existence of facts upon which the juvenile court asserted jurisdiction. Nevertheless, we then proceeded to determine whether the juvenile court had jurisdiction to terminate parental rights without a prior advisement at the adjudication phase of the proceedings. We said: "Due to the defect in the adjudication proceedings, we treat the first proceeding as the functional equivalent of 'no prior adjudication' . . . ." *In re Interest of Brook P. et al.*, 10 Neb. App. at 586, 634 N.W.2d at 298.

[7] A defective adjudication does not preclude a termination of parental rights under § 43-292(1) through (5), since no adjudication is required to terminate pursuant to those subsections, as long as due process safeguards are met. See *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999). We note:

Unlike § 43-292(6) and (7), § 43-292(1) through (5) do not require, imply, or contemplate juvenile court involvement, including adjudication, prior to the filing of the petition for termination of parental rights. Instead, subsections (1) through (5) each concern historical actions or conditions of the parents such as abandonment, neglect,

unfitnesses, and mental deficiency. There is no require-
ment of longitudinal involvement of the juvenile court
under § 43-292(1) through (5), much less a prior adjudi-
cation. Under § 43-291, an original petition may be filed
seeking termination of parental rights and the juvenile
court acquires jurisdiction of the termination proceed-
ing brought on by an original action under § 43-247(6)
without prior juvenile court involvement, except where
required by the Nebraska Juvenile Code.

*In re Interest of Joshua M. et al.*, 256 Neb. at 609-10, 591
N.W.2d at 566.

Accordingly, while § 43-292(6) requires a prior adjudica-
tion, subsection (4) does not. In this case, the State sought
to terminate parental rights based upon both subsections (4)
and (6). We conclude the adjudication was deficient because
Michael was not advised that his parental rights could be ter-
minated, and we thus treat it as the functional equivalent of no
prior adjudication, depriving the juvenile court of jurisdiction
to terminate Michael's parental rights pursuant to § 43-292(6).
However, a termination pursuant to § 43-292(4) is permitted as
an original action and is discussed below.

*Advisement of Rights at
Termination Proceeding.*

Michael argues that the juvenile court did not have juris-
diction to terminate his parental rights under § 43-292(4),
because his due process rights were violated by the juvenile
court's failure to properly advise him at the termination
phase that termination of his parental rights was a possible
consequence.

Section 43-247(6) states that the juvenile court shall have
jurisdiction of the proceedings for termination of parental
rights as provided in the Nebraska Juvenile Code. Section
43-279.01(1) states that when "termination of parental rights
is sought pursuant to subdivision (6) . . . of section 43-247,"
the juvenile court "shall" inform the parties of the nature of
the proceedings and the possible consequences or disposi-
tions, including termination of parental rights, as well as their
rights (e.g., right to counsel, right to remain silent, right to

confront and cross-examine witnesses, right to testify and to compel other witnesses to attend and testify, and right to appeal).

At the initial hearing on the motion to terminate Michael's parental rights, the juvenile court advised him as follows:

> THE COURT: All right. All right. [Michael], I want to take a moment and visit with you about the rights that you have in this motion. The petition has been filed requesting the termination of your parental rights to the above-named minor child. Because of that you have certain rights.
>
> First and foremost amongst those you have the right to be represented by an attorney, and in this matter [one] has been appointed to represent you. You have a limited right to remain silent. And what I mean by that is the state can call you as a witness at these hearings. However, if you are making statements that would constitute other criminal violations, they can't go into that, and you have a right to basically remain silent as to that, but otherwise they have a right to call you concerning matters such as care given to Keisha and those types of things.
>
> You have a right at the hearing, if you denied these allegations, to confront and cross-examine all witnesses, to compel the attendance of witnesses through use of the subpoena power of the court. You have a right to testify yourself at these proceedings. If the court enters any orders that you disagree with, you have a right to appeal those decisions to the Nebraska Court of Appeals. You have a right to have a record made for purposes of the appeal.

Michael confirmed that he understood these rights. The juvenile court also advised Michael of the allegations in the motion to terminate:

> THE COURT: All right. I would advise you at this time, [Michael], the allegations contained in the motion to terminate parental rights are as follows: The petition alleges, comes now [the] Guardian ad Litem, and hereby moves the court for an order terminating the parental rights of Michael . . . to the above-named minor child for

the following reasons: Number one, [Michael] is unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs or repeated lewd or lascivious behavior, which conduct is seriously detrimental to the health, morals or well-being of the juvenile, and, two, following the determination that the juvenile was one as described in Subdivision (3)(a) of Section 43-247, reasonable efforts to preserve and reunify the family have failed and that's failed to correct the conditions leading to that original determination.

Wherefore, the guardian ad litem prays that a summons be issued and a hearing be held upon the motion and upon such hearing the court enter an order terminating the parental rights of Michael . . . .

Do you understand the nature of the allegations contained in this motion to terminate parental rights?

[Michael]: Honestly, I understand what it — what it says, yeah. I understand what it means. I just . . . .

THE COURT: Yeah, and that's all we're trying to do at this time, [Michael]. I'm not asking you whether you agree with them.

[Michael]: Right.

THE COURT: I'm just asking you if you understand what's —

[Michael]: And, yes, I do understand.

THE COURT: — alleged.

[Michael]: I'm sorry, Your Honor. Yes, I understand, yes, what's been . . . .

THE COURT: Okay. All right. [Michael], I'll ask you at this time then, do the allegations contained in the motion to terminate your parental rights, do you admit or deny those allegations?

[Michael]: I deny that.

We conclude that Michael was adequately advised of the nature of the proceedings and the possible consequences or dispositions as required by Neb. Rev. Stat. § 43-247.01(1) (Reissue 2008). The juvenile court advised Michael that a petition had been filed seeking termination of his parental rights and of the contents of that petition. See *In re Interest of*

*A.D.S. and A.D.S.*, 2 Neb. App. 469, 471, 511 N.W.2d 208, 210 (1994) (mother was adequately advised of nature of proceedings and possible consequences where juvenile court stated, "'we are going to decide whether or not your rights as mother should be terminated'"). Further, the juvenile court advised Michael of his right to counsel, right to remain silent, right to confront and cross-examine witnesses, right to testify and to compel other witnesses to attend and testify, and right to appeal. Because Michael was given the required advisements under § 43-247.01(1), he was accorded his statutory due process rights, and therefore, we cannot say that the proceeding to terminate Michael's parental rights under § 43-292(4) was improper on this basis.

*Sufficiency of Evidence.*

[8] Michael assigns that the juvenile court erred in finding sufficient evidence to terminate his parental rights. In Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

The juvenile court based termination on § 43-292(4) and (6); however, as previously noted, our review is limited to whether there was sufficient evidence to terminate Michael's parental rights under the grounds set forth in § 43-292(4) and, if so, whether such termination was in Keisha's best interests.

[9] Section 43-292(4) provides that a juvenile court may terminate parental rights when the parent is "unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile."

The juvenile court received evidence of Michael's criminal record of drug and alcohol offenses. At the time of trial, Michael was 27 years old. The bulk of the evidence of Michael's drug and alcohol use occurred during the years

prior to Keisha's birth in October 2010. Between 2002 and 2010, Michael had five convictions for minor in possession (September 2002, August 2002, March 2004, April 2006, and June 2006); one conviction for possession of marijuana (January 2007); three convictions for possession of drug paraphernalia (January 2007 and two times in May 2008); and one conviction for possession of "legend drugs" (September 2008). Michael was also convicted of driving under the influence in March 2011; however, the offense occurred prior to Keisha's birth, as evidenced by the fact that Michael's bond was filed in August 2010. As stated previously, the foregoing evidence of Michael's drug and alcohol use occurred during the years prior to Keisha's birth in October 2010 and thus could not be seriously detrimental to the health, morals, or well-being of Keisha.

Also received into evidence at the termination hearing was an "Arrest/Detention Probable Cause Affidavit" showing that in June 2012, Michael was arrested for driving under suspension. During the arrest, the officer found marijuana and "a generic form of Vicodin." Michael was subsequently charged with possession of a controlled substance, driving under suspension, possession of "K2" or marijuana less than 1 ounce, and possession of drug paraphernalia. A bench warrant was issued in October after Michael failed to appear at a preliminary hearing related to the above charges. At the time of the termination hearing on November 9, Michael had been neither tried nor convicted of any offense stemming from his June arrest.

*In re Interest of Carrdale H*., 18 Neb. App. 350, 781 N.W.2d 622 (2010), involved a juvenile court adjudication of a child based upon the father's possession of illegal drugs, and this court reversed the adjudication order. We noted that the State failed to adduce any evidence regarding whether the father was charged with a crime, whether the father had any history of drug use in or out of the child's presence, whether the child was present when the father possessed the drugs, or whether the child was affected in any way by the father's actions. We held that the State failed to prove by a preponderance of the

evidence the petition's allegation that the father's use of drugs placed the child at risk for harm.

In *In re Interest of Carrdale H., supra*, we also noted that the father's offense, if he was in fact charged and convicted, could result in imprisonment or probation. The same is true in the instant case. Although Michael was charged with drug offenses stemming from his June 2012 arrest, he had been neither tried nor convicted at the time of the juvenile court trial. Additionally, if Michael should be convicted, either incarceration or probation is possible. The most serious of Michael's charged offenses is possession of a controlled substance, a Class IV felony, which is punishable by up to 5 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012). Under the sentencing guidelines, should Michael be convicted of possession of a controlled substance, he could be placed on probation.

The only other evidence of Michael's alcohol or drug use during Keisha's lifetime is (1) one positive drug test in September 2012, wherein Michael tested positive for "Delta-9 Carboxy THC" (THC is the active component of marijuana and cannabis), and (2) the testimony of a court-appointed special advocate who testified that Michael admitted to commencing intravenous drug use after he was released from jail and had begun the proceedings to "get [Keisha] back." There was also some evidence that on one visit, a visitation worker thought Michael was "under the influence." However, that report was based on Michael's "odd" behavior of trying to put a jacket on over a bookbag. The worker was not "able to smell any alcohol or anything" on Michael. On the record before us, the State failed to adduce any evidence as to how Michael's drug use was detrimental to Keisha. There was no evidence that she was present during any drug use or that any drug use affected Michael's ability to care for Keisha.

In *In re Interest of Brianna B. & Shelby B.*, 9 Neb. App. 529, 614 N.W.2d 790 (2000), the juvenile court adjudicated the children because of a pattern of alcohol use by the parents. This court concluded that the State failed to adduce evidence to show that the children lacked proper parental care. Although

there was evidence that the parents had consumed alcohol in the presence of the children, there was no evidence to show that the children were impacted by the drinking.

*In re Interest of Taeven Z.*, 19 Neb. App. 831, 812 N.W.2d 313 (2012), addressed a juvenile court adjudication where the mother had ingested a morphine pill that was not prescribed to her. This court found that there was no evidence that the child was affected by the mother's taking the nonprescribed pill or any evidence that the mother's taking the pill placed the child at risk. We held that there was no evidentiary nexus between the consumption of drugs by the mother and any definite risk of future harm to the child.

*In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013), involved a juvenile court adjudication for four children because of the mother's and stepfather's drug use and domestic violence. The two oldest children had been living with the mother and stepfather, but the two youngest children were living with grandparents. It was uncontested that the State met its burden as to the adjudication of the two oldest children. The Nebraska Supreme Court found that there was no evidence that the two younger children were present for the mother's and stepfather's drug use or domestic violence. The court held that the State failed to prove by a preponderance of the evidence an evidentiary nexus between the neglect suffered by the older children and any definite risk of future harm to the younger children.

In *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999), the juvenile court terminated the mother's parental rights to her four children because of the mother's neglect and drug use. See § 43-292(2) and (4). The mother had a long history of illegal drug use. She admitted using "'[c]rystal, meth, and cocaine'" since the age of 17. *In re Interest of Joshua M. et al.*, 256 Neb. at 600, 591 N.W.2d at 561. She tested positive for drugs on at least three separate occasions while the juvenile proceedings were pending. She was repeatedly incarcerated for her drug use. The Nebraska Supreme Court held that the mother was unfit by reason of her drug use and consequent incarceration to provide the care, subsistence, and protection needed by her children and, in

fact, has neglected to provide for them. The court held that the evidence established that the mother had neglected the children and was unfit as defined by statute. See § 43-292(2) and (4).

In *In re Interest of Brook P. et al.*, 10 Neb. App. 577, 634 N.W.2d 290 (2001), the juvenile court terminated the mother's and father's parental rights because they substantially and continuously or repeatedly neglected their children and because they were unfit to parent by reason of habitual use of intoxicating liquor or narcotic drugs. See § 43-292(2) and (4). The parents had a long history of drug use. The parents' drug use was associated with homelessness, joblessness, and domestic violence. On one occasion, the father called the State Patrol and said that he and the mother had used methamphetamines for the past few months and did not think they could care for the children. This court held the evidence clearly and convincingly showed that the use of drugs rendered the parents unfit and that it was in the children's best interests that parental rights be terminated. We held that the parents' insidious drug use substantially interfered with their ability to care for their family, hold jobs, and maintain housing for the family.

Although most of the cases cited above are adjudication cases, we still find them instructive. In adjudication cases filed under § 43-247(3)(a), the State need only prove the allegations in the petition by a *preponderance of the evidence*. See *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013). But in termination cases, the burden of proof is much greater. In order to terminate an individual's parental rights, the State must prove by *clear and convincing evidence* that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the children's best interests. See *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010). Thus, if the evidence of a parent's drug and alcohol use was insufficient to show that the child was at risk of harm for purposes of adjudication as described in some of the above-referenced cases, then that same evidence would certainly be insufficient to show that the parent's drug and alcohol use was detrimental to the juvenile

for purposes of termination of parental rights given the higher burden of proof.

In the instant case, the State failed to show how Michael's drug use was detrimental to Keisha. As noted previously, most of Michael's drug-related convictions occurred prior to Keisha's birth and therefore had no detrimental effect on her. Michael has had one drug-related arrest since Keisha's birth, but at the time of the termination hearing, he had been neither tried nor convicted of the charges stemming from his June 2012 arrest. A conviction and term of incarceration, while possible, are not in the record before us and therefore do not support a termination under § 43-292(4). Although the record supports that Michael has tested positive for drugs and has admitted to using drugs during the pendency of these juvenile proceedings, the State has failed to adduce any evidence, much less clear and convincing evidence, that Michael's drug use has affected or been detrimental to Keisha. Even the juvenile court noted the lack of evidence on this issue when, at the conclusion of the termination hearing, the judge stated: "[T]he evidence doesn't necessarily reflect that [Michael] has exposed this child to direct risks of drugs or alcohol." On our de novo review, we find that the State failed to prove by clear and convincing evidence that Michael's drug use renders him unfit. We therefore reverse the juvenile court's order terminating Michael's parental rights to Keisha.

Because we have concluded that there was insufficient evidence to support termination of Michael's parental rights pursuant to § 43-292(4), we need not determine whether termination of Michael's parental rights is in Keisha's best interests. We also do not need to address Michael's other assigned errors regarding the absence of "best interests" language in the motion to terminate and the admission of certain evidence. See *In re Trust Created by Hansen*, 281 Neb. 693, 798 N.W.2d 398 (2011) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case before it).

## CONCLUSION

In summary, we find that the deficiency of the adjudication proceeding (failure to properly advise of potential

consequences) renders that proceeding the functional equivalent of "no prior adjudication," which eliminates consideration of § 43-292(6) as a ground for termination. Our review of the one remaining ground, § 43-292(4), reveals insufficient evidence in the record to support termination. Accordingly, we reverse the order of the juvenile court terminating Michael's parental rights to Keisha.

REVERSED.