IN RE INTEREST OF GAVIN S. AND JORDAN S.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,
V. LACY S., APPELLANT, AND DANIEL S.,
APPELLEE AND CROSS-APPELLANT.
___ N.W.2d ___

Filed November 24, 2015.    No. A-14-1124.

1. **Juvenile Courts: Evidence: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Parental Rights: Evidence: Appeal and Error.** Because factual questions concerning a judgment or order terminating parental rights are tried by an appellate court de novo on the record, impermissible or improper evidence is not considered by an appellate court.

3. **Parental Rights.** When parental rights are terminated pursuant to Neb. Rev. Stat. § 43-292(9) (Cum. Supp. 2014), a prior adjudication order is not required.

4. **Parental Rights: Evidence: Proof.** For a juvenile court to terminate parental rights under Neb. Rev. Stat. § 43-292 (Cum. Supp. 2014), it must find by clear and convincing evidence that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests.

5. **Evidence: Words and Phrases.** Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven.

Appeal from the Separate Juvenile Court of Lancaster County: TONI G. THORSON, Judge. Affirmed.

- 402 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

Lisa F. Lozano for appellant.

Joe Kelly, Lancaster County Attorney, Alicia B. Henderson, and Joshua L. Christolear, Senior Certified Law Student, for appellee State of Nebraska.

Sanford J. Pollack, of Pollack & Ball, L.L.C., for appellee Daniel S.

Irwin, Inbody, and Riedmann, Judges.

Irwin, Judge.

## I. INTRODUCTION

Lacy S. appeals and Daniel S. cross-appeals from an order of the separate juvenile court of Lancaster County, which order adjudicated Lacy and Daniel's two minor children to be within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013) and terminated Lacy's and Daniel's parental rights to the children. In their appeals, both Lacy and Daniel assert that the juvenile court erred in admitting into evidence a report authored by a doctor who was unavailable to testify during the juvenile court proceedings. In addition, both Lacy and Daniel allege that the juvenile court erred in finding sufficient evidence to warrant the adjudication of their children pursuant to § 43-247(3)(a) and to warrant the termination of their parental rights. For the reasons set forth below, we affirm the decision of the juvenile court.

## II. BACKGROUND

Lacy and Daniel are the parents of Gavin S., born in August 2009, and Jordan S., born in June 2011. The events which gave rise to the juvenile court proceedings involving this family occurred on January 3, 2012.

In January 2012, Lacy was a stay-at-home mother who operated a daycare out of the family's home in order to earn additional income. One of the children who attended Lacy's daycare was 1-year-old Zachary T. On the morning

- 403 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

of January 3, Zachary's father dropped him off at Lacy and Daniel's home. When Zachary arrived at the daycare, he was awake, alert, happy, and playful.

Approximately 1 hour after Zachary arrived at the daycare, Lacy left to take Gavin and Jordan to a doctor's appointment. Daniel stayed behind to watch Zachary, who was in a baby swing in the family's living room. When Lacy returned to the home a couple of hours later, Zachary was still in the baby swing. Zachary remained in the swing, not moving and not making any noise, until about 3:30 p.m., when Lacy checked on him. At that time, she discovered that Zachary was not breathing and felt cold to the touch. Lacy called the 911 emergency dispatch service and attempted to perform CPR on Zachary. Zachary was later pronounced dead at the hospital.

After Zachary's death, doctors discovered that he had a skull fracture which was a few weeks old and that he had significant additional trauma to his brain which the doctors believed had occurred much more recently.

Due to the events of January 3, 2012, the State filed a motion for emergency temporary custody of Gavin and Jordan on January 5. The juvenile court granted this motion, ordered Gavin and Jordan removed from Lacy and Daniel's home, and placed them in the custody of the Department of Health and Human Services. The children have remained in the custody of the department, in an out-of-home placement, since the entry of the court's order on January 5. The next day, on January 6, the State filed a petition alleging that Gavin and Jordan were within the meaning of § 43-247(3)(a).

The petition alleged that the children were within the meaning of § 43-247(3)(a) due to the faults or habits of Lacy and Daniel or due to being in a situation dangerous to life or limb or injurious to their health. Specifically, the petition alleged that Zachary had "died as a result of extensive, inflicted head trauma" while in Lacy's and Daniel's care; that neither Lacy nor Daniel had provided any explanation for Zachary's head

trauma; and that consequently, Gavin and Jordan were at risk for harm.

A few months after the filing of the original petition, on March 29, 2012, the State filed an amended petition and a motion for the termination of Lacy's and Daniel's parental rights. In the amended petition, the State again alleged that Gavin and Jordan were within the meaning of § 43-247(3)(a) due to the faults or habits of Lacy and Daniel or due to being in a situation dangerous to life or limb or injurious to their health. Specifically, the amended petition alleged:

> On or about January 3, 2012, Zachary . . . , a one-year old child who had been in the care of [Daniel] and [Lacy], died as a result of cerebral edema which occurred while Zachary . . . was in the care of [Daniel] and/or [Lacy]. Zachary . . . also suffered from cerebral contusion(s), subarachnoid hemorrhages and bruises to his shoulders, which occurred while he was in the care of [Daniel] and [Lacy]. These injuries are most consistent with abusive head trauma.

The petition also alleged that Lacy and Daniel had not provided any explanation as to how Zachary's injuries occurred and that Lacy and Daniel had caused Zachary's death or failed to provide appropriate care to Zachary, which failure had contributed to or caused his death. The petition alleged that as a result of these facts, Gavin and Jordan were at risk for harm.

The motion for the termination of Lacy's and Daniel's parental rights alleged that termination was warranted pursuant to Neb. Rev. Stat. § 43-292(9) (Cum. Supp. 2014) because Lacy and Daniel subjected Zachary to aggravated circumstances, including, but not limited to, torture and chronic abuse. In addition, the State alleged that termination of Lacy's and Daniel's parental rights was in the children's best interests and that reasonable efforts to reunify the family were not required.

On January 13, 2014, the State filed a second amended petition and amended motion for termination of Lacy's and Daniel's parental rights. This petition and motion constitute the operative pleading for the proceedings at issue in this appeal. Accordingly, we lay out the allegations contained in this second amended petition and motion to terminate parental rights in some detail.

In the second amended petition, the State again alleged that Gavin and Jordan were within the meaning of § 43-247(3)(a) due to the faults or habits of Lacy and Daniel or due to being in a situation dangerous to life or limb or injurious to their health. Specifically, the second amended petition alleged:

A) On or between November of 2011 and January 3, 2012, [Daniel] and [Lacy] provided day-care for Zachary . . . .

B) On or after December 1, 2011, Zachary['s] skull was fractured while in the care of [Daniel] and/or [Lacy].

C) On or about January 3, 2012, Zachary . . . died as a result of cerebral edema and/or trauma to his brain which occurred while Zachary . . . was in the care of [Daniel] and/or [Lacy], and which was the result of child abuse and/or non-accidental or abusive head trauma.

D) On or about January 3, 2012, while in the care of [Daniel] and/or [Lacy], Zachary . . . suffered from acute injuries to his brain, acute injuries to his head, and acute symmetrical bruising to his shoulders which injuries and bruising are most consistent with child abuse and/or non-accidental or abusive head trauma.

E) Neither [Daniel] nor [Lacy] has provided an explanation as to how the above-described injuries, bruising, skull fracture, and/or death occurred to Zachary . . . .

F) [Daniel] and/or [Lacy] caused Zachary['s] death; and/or [Daniel] and/or [Lacy] failed to provide appropriate care to Zachary . . . which resulted in his death; and/or [Daniel] and/or [Lacy] failed to provide appropriate care to Zachary . . . which contributed to his death.

G) One or more of the above and/or this situation place(s) said juveniles at risk of harm.

H) All in Lancaster County, Nebraska.

In the amended motion to terminate Lacy's and Daniel's parental rights, the State again alleged that termination was warranted pursuant to § 43-292(9); however, in addition, the State alleged that termination was also warranted pursuant to § 43-292(7) because Gavin and Jordan had been in an out-of-home placement for 15 or more months of the most recent 22 months. The State alleged that termination of Lacy's and Daniel's parental rights was in the children's best interests and that reasonable efforts to reunify the family were not required.

On the same day that the State filed its second amended petition and amended motion to terminate parental rights, January 13, 2014, the hearing on that pleading began. This lengthy hearing continued on numerous dates in January through June 2014. We have reviewed the evidence presented at this hearing in its entirety, including the 2,500-page bill of exceptions and each of the more than 80 exhibits presented by the parties. However, we do not set forth the specifics of all of the voluminous testimony and exhibits here.

Nevertheless, because the exact cause of Zachary's death and the precise time his injuries were sustained played a central role in the hearing, and are similarly significant in this appeal, we do briefly summarize the expert witness testimony presented by all of the parties on this topic.

The State and the children's guardian ad litem offered the testimony of three separate medical professionals in order to prove that Zachary died as a result of injuries he sustained while at Lacy and Daniel's home on January 3, 2012. These medical professionals included Dr. Robert Bowen, a pathologist who performed the autopsy on Zachary; Dr. Daniel Davis, a pathologist and medical examiner in the State of Oregon; and Dr. Suzanne Haney, a pediatrician specializing in child abuse treatment.

Dr. Bowen testified that during the autopsy of Zachary, he observed evidence of both recent and older head trauma. Dr. Bowen testified that Zachary had a healing skull fracture which was more than 2 weeks old. Zachary also had bruising on his brain and bleeding on the surface of the brain which were much more recent. Dr. Bowen opined that these injuries were less than 24 hours old. In addition, Dr. Bowen observed bruising on both of Zachary's shoulders which he believed to be less than 24 hours old. Dr. Bowen testified that it was the most recent traumatic brain injuries, and not the skull fracture, that were the cause of Zachary's death.

After reviewing Zachary's medical records, police reports, and the autopsy report authored by Dr. Bowen, Dr. Davis testified that Zachary died from inflicted, blunt force head trauma which caused bruising to the brain and bleeding on the surface of the brain. He testified that such injuries would cause immediate and dramatic changes in Zachary, including irregular breathing, stiffening of his limbs, and unresponsiveness. Dr. Davis testified that given that Zachary was awake, alert, and mobile when he arrived at Lacy and Daniel's home on January 3, 2012, he had to have been injured by either Lacy or Daniel when they were caring for him that morning. Dr. Davis specifically testified that Zachary's preexisting skull fracture did not directly contribute to his death on January 3.

Similarly, Dr. Haney testified that Zachary's death was caused by abusive head trauma which occurred after Zachary was dropped off at Lacy and Daniel's home on January 3, 2012. She testified that the preexisting skull fracture did not cause Zachary's death. Dr. Haney indicated that in her experience in treating skull fractures in children, a child can die from a skull fracture and a resulting brain injury, but such death would occur immediately or in a few days after the injury. A child's condition would not dramatically worsen in the weeks following the injury; nor would a child die suddenly and unexpectedly weeks after incurring such an injury. Dr. Haney testified that Zachary's death was caused by a

- 408 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

second injury to Zachary's brain. This injury was caused by a force similar to a fall of approximately 12 feet, such as out of a window, or to a car accident. It was not an injury which could have occurred with normal caretaking or a fall from a piece of household furniture.

Lacy offered the testimony of one medical professional, Dr. Janice Ophoven, a pediatric pathologist. Dr. Ophoven disagreed with the other three medical professionals who testified. She testified that Zachary died as a result of complications from the skull fracture he sustained a few weeks prior to his death. She testified that Zachary did not sustain any new, significant trauma on January 3, 2012.

We will set forth other pertinent facts as presented at the hearing as necessary in our analysis below.

After the hearing, the juvenile court entered a detailed, 21-page order summarizing and analyzing the evidence presented by all the parties. In the order, the court indicated that it found the medical opinions of Drs. Bowen, Davis, and Haney to be credible and, accordingly, that Zachary "died as a result of blunt force trauma to his head and that the trauma was caused by physical force consistent with a finding of intentional injury." The court specifically stated that it found that the medical opinion of Dr. Ophoven was not supported by the evidence. The court found that Zachary did not die as a result of the skull fracture he sustained weeks before his death. Instead, the court found that on January 3, 2012, "[a]fter [Zachary] was left in the care of Daniel . . . and Lacy . . . , one or both of them inflicted the injury that resulted in his death and one or both of them failed to provide prompt medical care to Zachary."

Ultimately, the court adjudicated Gavin and Jordan as children described in § 43-247(3)(a). The court also terminated Lacy's and Daniel's parental rights to the children after finding the children were within the meaning of § 43-292(7) and (9) and that such termination was in their best interests.

Lacy appeals and Daniel cross-appeals from this order.

## III. ASSIGNMENTS OF ERROR

Given that Lacy and Daniel present the same assignments of error in their appeals, we combine their assignments of error as follows: Lacy and Daniel assert that the juvenile court erred in (1) admitting into evidence exhibit 53, a report authored by Dr. Roger Brumback, a neuropathologist, when Dr. Brumback was unavailable to testify at the termination hearing; (2) finding sufficient evidence to warrant the adjudication of Gavin and Jordan pursuant to § 43-247(3)(a); and (3) finding sufficient evidence to warrant the termination of their parental rights to Gavin and Jordan.

## IV. ANALYSIS

### 1. Standard of Review

[1] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

### 2. Admissibility of Exhibit 53

Lacy and Daniel first challenge the juvenile court's decision to admit into evidence exhibit 53, a pathology report authored by Dr. Brumback, who was not available to testify at the termination hearing. On appeal, they both assert that the report was inadmissible because it contained hearsay and because they were unable to cross-examine Dr. Brumback about his opinions and conclusions. Lacy and Daniel also both assert that the juvenile court erred in permitting Dr. Bowen to discuss the report during his testimony. For the reasons set forth below, we find Lacy's and Daniel's assertions concerning exhibit 53 to be without merit.

As we discussed above, Dr. Bowen performed the autopsy of Zachary after his death. Part of the autopsy involved

- 410 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

studying specific areas of Zachary's brain. For this portion of the autopsy, Dr. Bowen worked in collaboration with Dr. Brumback. Together, Drs. Bowen and Brumback determined what specific testing needed to be completed on the brain and then conducted that testing and analyzed the results. Once the testing and analysis were completed, Dr. Brumback authored a report containing his observations and conclusions. After he authored this report, but before the time of the termination hearing in this case, Dr. Brumback died unexpectedly. As a result, he was unavailable to testify at the hearing.

During Dr. Bowen's testimony, the State questioned him about Dr. Brumback's report. Dr. Bowen indicated that he relied on some of the conclusions in the report in rendering his opinion about the cause of Zachary's death. After this testimony, the State offered into evidence those portions of Dr. Brumback's report that Dr. Bowen relied upon. This exhibit was identified as exhibit 53. Lacy and Daniel objected to the admission of this exhibit, arguing that the report was not relevant, that it was not admissible because Dr. Brumback was not available to be cross-examined, and that it constituted hearsay. The court overruled the objections and admitted into evidence exhibit 53. Lacy and Daniel appeal from this evidentiary ruling.

In analyzing whether the juvenile court erred in admitting into evidence Dr. Brumback's report, we first note that in its lengthy order and recitation of the evidence presented, the court did not ever mention Dr. Brumback, his report, or the conclusions contained in the report. In fact, the court specifically stated that it based its conclusion that Zachary died from significant injuries which were inflicted on January 3, 2012, "on the medical testimony provided by Dr. Davis and Dr. . . . Bowen and Dr. . . . Haney." Accordingly, it does not appear that the juvenile court relied on Dr. Brumback's report in any way.

[2] However, even if the juvenile court did rely on Dr. Brumback's report and even if that report was erroneously

- 411 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

admitted into evidence, a juvenile court's consideration of improper evidence does not, by itself, require reversal of a judgment terminating parental rights under the Nebraska Juvenile Code. Because factual questions concerning a judgment or order terminating parental rights are tried by an appellate court de novo on the record, impermissible or improper evidence is not considered by an appellate court. See *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987).

In our review of the juvenile court's decision to terminate Lacy's and Daniel's parental rights, we assume, without specifically deciding, that exhibit 53, Dr. Brumback's report, was improperly admitted into evidence, and as such, we do not consider that exhibit in determining whether there was sufficient evidence to warrant the termination of Lacy's and Daniel's parental rights. Instead, we rely on the testimonies of the four other experts, Drs. Bowen, Davis, Haney, and Ophoven, in determining the cause of Zachary's death.

### 3. ADJUDICATION

Lacy and Daniel next challenge the juvenile court's decision to adjudicate their children pursuant to § 43-247(3)(a). However, before we address the merits of this assertion, we address their arguments concerning the juvenile court's decision to terminate their parental rights, because we find that a prior adjudication is not necessary when parental rights are terminated pursuant to § 43-292(9). So, if we affirm the court's decision to terminate Lacy's and Daniel's parental rights on that ground, an analysis of the propriety of the juvenile court's adjudication order would be unnecessary.

The Nebraska Supreme Court has previously found that the grounds contained in § 43-292(1) through (5) do not "require, imply, or contemplate juvenile court involvement, including adjudication, prior to the filing of the petition for termination of parental rights." *In re Interest of Joshua M. et al.*, 256 Neb. 596, 609, 591 N.W.2d 557, 566 (1999). Subsection (9)

- 412 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

of § 43-292 was not in effect at the time of the decision in *In re Interest of Joshua M. et al.*, and as a result, the Supreme Court did not specifically determine whether termination under that subsection required a prior adjudication order. See *id*. However, based upon our review of the court's rationale with regard to § 43-292(1) through (5) and our reading of subsection (9), we conclude that subsection (9) also does not require, imply, or contemplate an adjudication prior to the termination of parental rights.

In *In re Interest of Joshua M. et al.*, 256 Neb. at 609-10, 591 N.W.2d at 566, the Supreme Court explained its rationale for finding that § 43-292(1) through (5), unlike subsections (6) and (7), do not require a prior adjudication order:

> [S]ubsections (1) through (5) each concern historical actions or conditions of the parents such as abandonment, neglect, unfitness, and mental deficiency. There is no requirement of longitudinal involvement of the juvenile court under § 43-292(1) through (5), much less a prior adjudication. . . .
>
> Through the plain language of § 43-292, the Legislature has demonstrated its intention that under certain circumstances, prior court action or an adjudication is required before parental rights can be terminated. See § 43-292(6) and (7). Conversely, in this same statutory section, the Legislature has listed other conditions justifying parental termination, dependent not upon prior juvenile court action but upon the actions or conditions of the parents. The Legislature's obvious inclusion of prior court action under certain conditions demonstrates a clear intention that such action is necessary only under the enumerated circumstances.

When we apply the court's rationale concerning § 43-292(1) through (5) to the language of subsection (9), we conclude that there is no indication that the Legislature contemplated any prior court action prior to termination under this subsection. Section 43-292(9) provides that a court may terminate

- 413 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

parental rights when "[t]he parent of the juvenile has sub-jected the juvenile or another minor child to aggravated cir-cumstances, including, but not limited to, abandonment, tor-ture, chronic abuse, or sexual abuse." This language is focused primarily on "the actions or conditions of the parents" and not on any prior juvenile court involvement. See *In re Interest of Joshua M. et al.*, 256 Neb. at 610, 591 N.W.2d at 566. The Legislature did not include any mention of prior court action under this subsection.

[3] We conclude that terminating parental rights pursuant to § 43-292(9) does not require a prior adjudication order. And, because no prior adjudication order is required, we do not review at this point in our analysis the juvenile court's decision to adjudicate Gavin and Jordan. Instead, we will first analyze whether the court abused its discretion in terminating Lacy's and Daniel's parental rights pursuant to § 43-292(9). If we do not find an abuse of discretion in this regard, we need not discuss the court's adjudication order any further.

### 4. Termination of Parental Rights

On appeal, both Lacy and Daniel assert that the juvenile court erred in finding that clear and convincing evidence sup-ports the termination of their parental rights to Gavin and Jordan. Specifically, Lacy and Daniel assert that there was insufficient evidence presented to prove they were responsible for Zachary's death and that without such definitive evidence, there is no basis for the termination of their parental rights. Upon our de novo review of the record, we affirm the decision of the juvenile court to terminate Lacy's and Daniel's paren-tal rights.

[4,5] For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests. See *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). The State must prove these facts by clear and convincing evidence. *Id*. Clear and

- 414 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *Id*.

### (a) Statutory Factors

In this case, the juvenile court found that termination of Lacy's and Daniel's parental rights was warranted pursuant to § 43-292(7) and (9). Because only one statutory ground contained within § 43-292 must be proven to support the termination of parental rights, we focus our discussion on the evidence presented with regard to § 43-292(9).

As we have stated above, § 43-292(9) provides that parental rights may be terminated when "[t]he parent of the juvenile has subjected the juvenile or another minor child to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse." Upon our de novo review of the record, we conclude that there was clear and convincing evidence presented at the termination hearing to demonstrate that Lacy and Daniel subjected Zachary to "aggravated circumstances" pursuant to subsection (9).

The evidence presented by the State at the termination hearing revealed that 1-year-old Zachary arrived at Lacy and Daniel's home for daycare on January 3, 2012. When he arrived, he was alert, playful, and happy. And, although he was suffering from an undiagnosed skull fracture, that injury had begun to heal and, on that morning, was not affecting Zachary in a significant way.

Approximately 8 hours after Zachary arrived at Lacy and Daniel's home, he was pronounced dead due to recent and severe head trauma similar to that incurred in a fall from a height of at least 12 feet or in a car accident. Such trauma was so significant that anyone would have been able to observe an immediate and dramatic change in Zachary. He would have had trouble breathing and moving his limbs, and soon after sustaining the injury, he would have become completely unresponsive. Clearly, Zachary did not have such an injury when

- 415 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

he arrived at Lacy and Daniel's home. Lacy and Daniel were the only people who provided care for Zachary during and after the time he sustained this serious injury. Neither Lacy nor Daniel offered any explanation for Zachary's injury or death. Instead, they contend that Zachary fell asleep in a baby swing at 10:15 in the morning and that they assumed that he continued to sleep for the next 6 hours until Lacy finally checked on him and found him unresponsive. While Zachary was in the swing for that extended period of time, no one checked on his well-being, even though Zachary had never before slept that long and even though he had skipped mealtime, snacktime, and all diaper changes. Lacy and Daniel's story provides more questions than answers, and it is simply not supported by the weight of a majority of the expert medical testimony.

Moreover, there was some evidence which suggested that Zachary had previously been seriously injured in Lacy and Daniel's home in the weeks leading up to January 3, 2012. Specifically, there was evidence that Zachary sustained his skull fracture while at daycare when he fell down some stairs. Lacy did not report Zachary's fall to his parents and, in fact, seemingly lied to his parents when they asked how he obtained a large bump on the back of his head. As a result of Lacy's failure to report the fall, Zachary's skull fracture went undiagnosed, despite his parents' repeated trips to multiple medical professionals. After Zachary's death, Lacy attempted to cover up this earlier incident.

When viewed as a whole, the evidence presented by the State is sufficient to clearly and convincingly prove that Lacy and Daniel subjected Zachary to "aggravated circumstances" pursuant to § 43-292(9). This evidence demonstrates that Zachary died as a result of serious injuries he sustained while in Lacy's and Daniel's care. These injuries could not have been sustained by normal toddler activities or by normal caretaking. Instead, these injuries were a result of intentional child abuse. In addition, the evidence demonstrates that Lacy and

- 416 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

Daniel failed to obtain medical care for Zachary both after he sustained the fatal injuries and on a previous occasion, after he fell and fractured his skull. Instead, they tried to cover up Zachary's injuries and delayed obtaining necessary medical intervention.

On appeal, Lacy and Daniel assert that the State's evidence concerning the cause of Zachary's fatal injuries and the cause of his skull fracture was not sufficient to demonstrate their responsibility for Zachary's death, because there was conflicting evidence presented about both the events of January 3, 2012, and the cause of Zachary's death. Specifically, they point to the testimony of Lacy's expert, Dr. Ophoven, who opined that Zachary's death was a result of complications from the skull fracture and not from any new injury he suffered on January 3, and to evidence that doctors were not able to place a specific date on when Zachary sustained that skull fracture. Lacy's and Daniel's assertions lack merit.

While we recognize that there was conflicting evidence presented at the trial about the cause and timing of Zachary's fatal injuries, we also must recognize that the juvenile court heard and observed all of the witnesses and that it specifically determined that the State's and the guardian ad litem's experts, Drs. Bowen, Davis, and Haney, were credible, while Lacy's expert, Dr. Ophoven, was not credible. In addition, the court found that the statements of Lacy and Daniel and the testimony of Lacy were also not credible. As we stated above, in appeals from juvenile court proceedings, when the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. See *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). Given our de novo review of all of the evidence presented, and giving weight to the juvenile court's findings about witness credibility, we affirm the juvenile court's conclusion that termination of Lacy's and Daniel's parental rights was warranted pursuant to § 43-292(9). There was clear and convincing

- 417 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

evidence presented to demonstrate that Lacy and Daniel subjected Zachary to "aggravated circumstances." See *id.*

### (b) Best Interests

Section 43-292 requires that parental rights can be terminated only when the court finds that termination is in the child's best interests. A termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights. See *In re Interest of Crystal C.*, 12 Neb. App. 458, 676 N.W.2d 378 (2004). Therefore, given such severe and final consequences, parental rights should be terminated only "'[i]n the absence of any reasonable alternative and as the last resort . . . .'" See *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 467, 598 N.W.2d 729, 741 (1999), quoting *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993).

In its order, the juvenile court found that because Lacy and Daniel "bear the responsibility for the abuse and death of Zachary," it is in the best interests of Gavin and Jordan that their parental rights be terminated. Specifically, the court found that Lacy and Daniel are "unfit to be entrusted with the care of their children because of their abuse and neglect of Zachary . . . and their failure to accept responsibility for their actions." The court explained its decision further:

> [Lacy and Daniel] have not accepted responsibility for their actions or failures to act to provide medical care for Zachary. They have not explained the injuries Zachary received. It is unlikely that they will do so now because to do so would potentially result in criminal charges being brought they have thus far avoided. [Lacy and Daniel] have remained silent as to the true events involving Zachary despite having their children removed. They have remained silent despite having their parental rights placed at jeopardy. Given their silence to date, with so much at stake, it is unlikely they would now come forward with an explanation. Without that

- 418 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

explanation and acceptance of responsibility there can be no elimination of risk of harm to their children. There is no rehabilitative plan that could be developed by [the Nebraska Department of Health and Human Services] that could correct the adjudicated conditions in the Second Amended Petition or that would adequately correct the actions of these parents or that would protect [Gavin and Jordan].

[Gavin and Jordan] need permanency and the ability to move on with parents that can provide a safe and stable home. Lacy . . . and Daniel . . . are unable to provide that home. It is in the best interest of the above children that the parental rights of Lacy . . . and Daniel . . . be terminated. . . .

Lacy and Daniel appeal from the juvenile court's finding that termination of their parental rights is in Gavin's and Jordan's best interests. In support of their argument, they again assert that there was not sufficient evidence to demonstrate their responsibility for Zachary's injuries and death. In addition, they assert that there was no evidence whatsoever which demonstrated that they were anything but loving and involved parents to their own children, Gavin and Jordan. Upon our de novo review of the record, we affirm the decision of the juvenile court that termination of Lacy's and Daniel's parental rights is in the children's best interests.

As we discussed more thoroughly above, there was clear and convincing evidence presented at the termination hearing which revealed that Lacy and Daniel were responsible for the injuries Zachary sustained on January 3, 2012, and his resulting death. There was also clear and convincing evidence presented which demonstrated that Lacy and Daniel failed to obtain any medical intervention for Zachary after he suffered his injuries. Neither Lacy nor Daniel has ever provided any reasonable explanation for what happened to Zachary on January 3. Given the gravity of Zachary's fatal injuries and given the lack of explanation for those injuries, we must

- 419 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF GAVIN S. & JORDAN S.
Cite as 23 Neb. App. 401

agree with the findings of the juvenile court. There are no rehabilitative measures which can be offered to Lacy and Daniel which would make reunification of the family possible at some point in the future, and returning Gavin and Jordan to the care and custody of their parents without any such measures would present an unacceptable risk to their safety and well-being.

We recognize that there was no evidence presented about Lacy and Daniel acting inappropriately or violently with their own children. In fact, the visitation notes from their daily visitations with the children while this case was pending reflect that Lacy and Daniel have a strong bond with the children and love them very much. However, because we do not know exactly what happened to Zachary on January 3, 2012, the risk of harm to Gavin and Jordan in their parents' home is simply too much to overcome. There is no reasonable alternative other than to terminate Lacy's and Daniel's parental rights to Gavin and Jordan.

## V. CONCLUSION

After reviewing the record de novo, we conclude that the juvenile court did not err in finding that clear and convincing evidence supports the termination of Lacy's and Daniel's parental rights to Gavin and Jordan under § 43-292(9) or in finding that clear and convincing evidence shows that termination of Lacy's and Daniel's parental rights is in the children's best interests. For those reasons, we affirm the court's order terminating Lacy's and Daniel's parental rights to both Gavin and Jordan.

AFFIRMED.